JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

DEC 19 1975

PATRICIA D. HOWARD
CLERK OF THE PANEL

BEFORE THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

IN RE WESTINGHOUSE ELECTRIC CORP. )
URANIUM CONTRACTS LITIGATION      )   DOCKET NO. 235

OPINION AND ORDER

BEFORE JOHN MINOR WISDOM, CHAIRMAN, AND EDWARD
WEINFELD, EDWIN A. ROBSON, WILLIAM H. BECKER *,
JOSEPH S. LORD, III, STANLEY A. WEIGEL, AND
ANDREW A. CAFFREY, JUDGES OF THE PANEL

PER CURIAM

Westinghouse Electric Corp. is the sole defendant in thirteen federal actions in as many districts [1] filed by a number of its utility customers. [2] Each of these actions, to a large extent, involves an alleged contractual obligation on Westinghouse's part for the present or future delivery of uranium to fuel nuclear power plants operated by the plaintiff-utilities or planned for operation in the future.

---

\* Judge Becker recused himself and took no part in the consideration or decision of this matter.

[1] See Schedule A following this opinion for a listing of the actions involved and the districts in which they are pending.

[2] An additional action brought by another of Westinghouse's utility customers is presently pending in Pennsylvania state court at Pittsburgh, although no federal action is now before the court in the Western District of Pennsylvania.

- 2 -

These actions were spawned by a notice sent by Westinghouse to its uranium customers on September 8, 1975, in which Westinghouse stated that full performance of any contractual obligations which it may have had for the supply of uranium had become "commercially impracticable" by reason of unforeseen developments resulting from the worldwide energy crisis and that Westinghouse was accordingly excused from such performance by reason of §2-615 of the Uniform Commercial Code.

The September 8, 1975 notice further stated that Westinghouse had established a program pursuant to §2-615(b) of the Uniform Commercial Code to allocate uranium in its inventory or on order fairly and equitably among its customers. Under the allocation plan, each customer would have received slightly less than nineteen percent of its anticipated uranium needs as those needs were described in the allocation plan.

On October 30, 1975, Westinghouse filed a complaint styled as one in the nature of interpleader in the Western District of Pennsylvania for the purpose of securing resolution of what it saw as the conflicting claims of the various utility-plaintiffs to the limited quantities

- 3 -

of uranium which it had in inventory or on order from its suppliers.³/ On November 6, 1975, Westinghouse's interpleader action was dismissed by Chief Judge Herbert P. Sorg who concluded that the requisite adversity of claims necessary to sustain jurisdiction under 28 U.S.C. §1335 was absent.⁴/

This matter is before the Panel on Westinghouse's motion to transfer all actions to the Western District of Pennsylvania for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. §1407. All responding parties, with one exception,⁵/ oppose the motion.

---

3/ Two of the actions presently before the Panel, Long Island Lighting Company v. Westinghouse Electric Corporation, E.D.N.Y., Civil Action No. 75 Civ. 1878 and Northeast Utilities Service Company, et al. v. Westinghouse Electric Corporation, D.Conn, Civil Action No. H 75-373, had not yet been instituted at the time Westinghouse filed its interpleader action. Accordingly, plaintiffs in those actions were not named as adverse claimants by Westinghouse.

4/ Westinghouse has argued that Judge Sorg's dismissal of its interpleader action was predicated, in large measure, on the utilities' representation that they would not oppose a motion by Westinghouse to transfer all actions to a single district under 28 U.S.C. §1407. Although it appears that several of the utilities present during the pertinent hearing did indeed state such lack of opposition, at least one of the utilities was reluctant to make that concession without time for further reflection. In any event, the decision we reach herein is based on our resolution of the merits of the transfer request and not on any principles of estoppel applied against the utility-plaintiffs.

5/ Union Electric Company favors the request for coordinated or consolidated pretrial proceedings but suggests a transferee forum other than the Western District of Pennsylvania.

- 4 -

In the alternative, respondents suggest that in the event the Panel does transfer these actions, a district other than the Western District of Pennsylvania should be selected as the transferee forum. The most frequently mentioned alternative transferee courts are the Eastern District of Tennessee, the Southern District of Florida, the District of South Carolina or the Eastern District of Virginia. In addition, if any transfer is ordered, two of the respondents have requested that we exercise our powers under the proviso of sub-section (a) of Section 1407 by separating certain "claims" in their actions and remanding them to their respective transferor courts.  6/

We find that these actions involve common questions of fact and that their transfer under Section 1407 to the Eastern District of Virginia will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. Because we believe that the transferee judge is in the best position to determine

---

6/   Respondent Florida Power & Light Company has asked the Panel to separate the "claims" in its action relating to irradiated fuel and contract termination date and remand them to the Southern District of Florida, while respondent Tennessee Valley Authority has asked us to separate Counts I, II and III of its complaint relating to ostensibly unique claims arising from TVA's status as a federal agency and remand them to the Eastern District of Tennessee.

- 5 -

the relationship between the "claims" that respondents TVA and Florida Power & Light Company seek to have separated and remanded and the remainder of the litigation, we deny their requests for us to exercise our powers under Section 1407(a). [7/]

The arguments in opposition to transfer rest heavily on an asserted distinction between

---

[7/] See In re Midwest Milk Monopolization Litigation, 386 F. Supp. 1401, 1403 (J.P.M.L. 1975), where the Panel made the following observation with respect to a request for separation and remand:

> "Although we are sensitive to the arguments advanced by plaintiff, we believe that they should properly be addressed to the transferee judge. He is in the best position to determine whether Milk, Inc.'s claims are susceptible to immediate remand or whether they are inextricably related to Keystone's counterclaim and the litigation pending in the Western District of Missouri. See, e.g., In re Four Seasons Securities Litigation, 361 F. Supp. 636, 638 (Jud. Pan. Mult. Lit. 1973). Should the transferee judge deem an immediate remand of Milk, Inc.'s claims appropriate, procedures are available whereby this may be accomplished with a minimum of delay. [See Rule 11, R.P.J.P.M.L., 65 F.R.D. 253, 260-63 (1975)]."

the seeming legal commonality of the defense of
commercial impracticability under §2-615 of the
Uniform Commercial Code and the separate factual
inquiries necessary to sustain that defense in each
action.  Since each contract was negotiated at
a different time by different individuals, repond-
ents maintain, a determination of whether performance
has been rendered commercially impracticable by
the occurrence of intervening circumstances that
were not within the contemplation of the parties
at the time of contracting would entail an examination
of the different intervening factors as compared with
each separate party's contemplation of them at the
time of contracting.  Hence, they insist, the factual
commonality between their actions is purely illusory.
Moreover, respondents argue, the contracts in question
differ in their essential terms.  Some, they note,
were for the supply of uranium only while others
included enrichment contract administration, fabrica-
tion contracts, delivery of completed fuel assemblies
and/or the supply and servicing of an entire nuclear
steam supply system.

     Although respondents' arguments have
a certain attractiveness, they fail, in our view,
to appreciate that there are some very significant
common questions of fact among these actions.

For example, a determination of the commercial impracticability of the present and future performance of Westinghouse's contractual obligations for the supply of uranium depends, in part, on the present and foreseeable supply of uranium on the open market and its cost. And even assuming that a large part of the §2-615 defenses rests on the separate contemplation of the individual parties negotiating each of the contracts, it is nonetheless clear that common factual questions will be raised concerning the effect of any alleged unforeseen intervening circumstances on the price and supply of uranium. Thus, while we recognize that these actions involve some individual questions of fact pertaining to each utility's contractual relationship with Westinghouse, we are persuaded that sufficient commonality of factual issues exists to warrant transfer and that the most just and efficient conduct of these actions can best be achieved through centralized management by a single judge. Specifically, Section 1407 proceedings will prevent duplication of discovery, eliminate the possibility of colliding pretrial rulings by courts of coordinate jurisdiction, and avoid potentially conflicting preliminary injunctive

- 8 -

demands on Westinghouse with respect to its delivery of uranium.

Moreover, under the guidance of the transferee judge, a pretrial program can be developed that would insure that the needs of the respective parties for any unique discovery or individual judicial attention can be accommodated concurrently with the common pretrial matters. See In re Republic National-Realty Equities Securities Litigation, 382 F. Supp. 1403, 1405-06 (J.P.M.L. 1974). Such a program will streamline the entire litigation and thereby benefit all parties, the witnesses and the judiciary.

We turn now to the selection of a transferee district for this litigation. At the outset, we note our reluctance to transfer these actions to the Western District of Pennsylvania, movant's preference, since no related federal action is presently pending there. See In re Air Crash Disaster Near Papeete, Tahiti, on July 22, 1973, 397 F. Supp. 886, 887 (J.P.M.L. 1975). Although several other districts were suggested in the briefs submitted to the Panel, on balance, we believe that the Eastern District of Virginia is the most appropriate transferee forum. Indeed, this district

- 9 -

was apparently preferred by the greatest number of utilities during oral argument before the Panel and was also Westinghouse's second choice. Furthermore, the record reveals that Judge Robert R. Merhige, Jr., to whom the Virginia action is assigned, has had an opportunity to gain a familiarity with the complicated issues involved here, which will enable him to supervise this litigation toward its most just and expeditious termination. See In re Griseofulvin Antitrust Litigation, 395 F. Supp. 1402, 1403 (J.P.M.L. 1975).

IT IS THEREFORE ORDERED that the actions listed on the following Schedule A and pending in districts other than the Eastern District of Virginia be, and the same hereby are, transferred to the Eastern District of Virginia and, with the consent of that court, assigned to the Honorable Robert R. Merhige, Jr. for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. §1407 with the action pending in that district and listed on Schedule A.

SCHEDULE A                                           DOCKET NO. 235

### DISTRICT OF CONNECTICUT

Northeast Utilities Service Co.,
et al. v. Westinghouse Electric            Civil Action
Corp.                                      No. H-75-373

### SOUTHERN DISTRICT OF NEW YORK

Consolidated Edison Company of New York    Civil Action
v. Westinghouse Electric Corp.             No. 75CV 5503-CHT

### EASTERN DISTRICT OF NEW YORK

Long Island Lighting Co. v.                Civil Action
Westinghouse Electric Corp.                No. 75C1878

### DISTRICT OF SOUTH CAROLINA

South Carolina Electric & Gas Co.          Civil Action
v. Westinghouse Electric Corp.             No. 75-1863

### SOUTHERN DISTRICT OF FLORIDA

Florida Power & Light Co. v.               Civil Action
Westinghouse Electric Corp.                No. 75-2319

### NORTHERN DISTRICT OF ALABAMA

Alabama Power Co. v. Westinghouse          Civil Action
Electric Corp.                             No. 75-P1892S

### EASTERN DISTRICT OF VIRGINIA

Virginia Electric & Power Co. v.           Civil Action
Westinghouse Electric Corp.                No. 75-0514-R

### EASTERN DISTRICT OF TENNESSEE

Tennessee Valley Authority v.              Civil Action
Westinghouse Electric Corp.                No. 3-75-298

### NORTHERN DISTRICT OF TEXAS

Texas Utilities Services, Inc. v.          Civil Action
Westinghouse Electric Corp.                No. 3-75-1241C

### SOUTHERN DISTRICT OF TEXAS

Houston Lighting & Power Co. v.            Civil Action
Westinghouse Electric Corp.                No. 75-H-1729

- 2 -

### EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| Union Electric Co. v. Westinghouse Electric Corp. | Civil Action No. 75-893C(3) |

### DISTRICT OF KANSAS

| | |
|---|---|
| Kansas Gas & Electric Co., et al. v. Westinghouse Electric Corp. | Civil Action No. 75-250-C6 |

### EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Wisconsin Electric Power Co., et al. v. Westinghouse Electric Corp. | Civil Action No. 75-C-571 |